UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------
JERRY FONTAINE, on behalf of himself
and all others similarly situated,

                            Plaintiff,                            No. ___

-against-                                                          CLASS ACTION

RESURGENT CAPITAL SERVICES, L.P.,
and LVNV FUNDING, LLC;                            JURY DEMANDED

                            Defendants.
------------------------------------------------------

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Jerry Fontaine ("Fontaine") brings this action to secure redress from unlawful collection practices engaged in by defendants Resurgent Capital Services, L.P. ("Resurgent"), and LVNV Funding LLC ("LVNV"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and New York General Business Law §349 ("GBL §349").

2.     LVNV is a debt buyer that acquires, among other kinds of debt, charged-off credit card accounts of consumers by virtue of assignments from account originators and intermediary debt sellers. LVNV engaged in collection activities against Fontaine and similarly situated class members, all of whom were alleged to be liable on credit card accounts originated by Synchrony Bank that were allegedly assigned to LVNV after multiple assignments. Proper notices of the assignments by assignors in the chain of title of from Synchrony Bank to LVNV were not provided in accordance with New York law.

As a result, LVNV had no legal interest in the debts, and their attempted collection caused injury to Fontaine and class members.

3. Resurgent is an affiliate of LVNV that is involved in collecting its debts.

4. New York law requires that a debtor, in order to be charged with a duty to pay a debt to an assignee, must first have actual notice of the assignment. *Tri City Roofers, Inc. v. Northeastern Industrial Park*, 61 N.Y. 2d 779, 780, 461 N.E.2d 298, 473 N.Y.S.2d 161 (1984). This must include proof in evidentiary form of "the date defendant was notified of the assignment." *Caprara v. Charles Court Assoc.*, 216 A.D.2d 722, 723, 627 N.Y.S.2d 836 (3d Dept. 1995). An assignee acquires no greater rights than those of the assignors and takes the assignment subject to all defenses and counterclaims possessed against the assignors. *Chaikovska v. Ernst & Young, LLC*, 78 A.D.3d 1661, 1663, 913 N.Y.S.2d 449 (4th Dept. 2010). Due process requires that the notice of the assignment be given to the debtor *by the assignor and not by the assignee. Chase Bank USA v. Cardello*, 27 Misc.3d 791, 794, 896 N.Y.S.2d 856 (N.Y.Civ.Ct. 2010); *Moukengeschaie v. Eltman, Eltman & Cooper, PC*, 277 F.Supp.3d 337, 352 (E.D.N.Y. 2017). The FDCPA is violated pursuant to Sections 1692e and 1692f when a debt buyer engages in collection activities against a debtor who has not received the notice of assignment of the debt required by New York State case law. *Musah v. Houslanger & Assoc., PLLC,* 962 F.Supp.2d 636, 638-639 (S.D.N.Y. 2013); *Moukengeschaie v. Eltman, Eltman & Cooper, PC*, *supra*, at 341-342.

5. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

6. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

7. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

8. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

9. Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

10. GBL §349 prohibits deceptive acts or practices against consumers in New York State in the conduct of any business, trade or commerce, or furnishing of any service.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d) and 28 U.S.C. §1331, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

12. Venue in this District is proper in that each Defendant transacts business here and the conduct complained of occurred here and across New York State.

## PARTIES

13. Plaintiff Fontaine is a natural person residing in Monroe County, New York.

14. Defendant LVNV is a foreign limited liability company organized under the laws of Delaware with offices at 6801 S. Cimarron Rd., Ste. 424-J, Las Vegas, NV 89113. It does business in this state. Its registered agent and office is Corporation Service Company, 80 State Street, Albany, New York 12207.

15. Defendant LVNV is engaged in the principal or sole business of liquidating allegedly defaulted debts originally owed to others and incurred for personal, family or household purposes.

16. Defendant LVNV pays an average of less than ten cents on the dollar for the debts.

17. Defendant LVNV then attempts to collect the purchased debts by legal proceedings and having debt collectors dun consumers.

18. Defendant LVNV is named as the plaintiff in more than 10,000 collection lawsuits per year throughout the United States.

19. Defendant LVNV regularly uses the mails and telephones in the process of collecting the debts it purchases.

20. The sole source of income of LVNV is liquidation of consumer debts it purchases.

21. Defendant LVNV is a "debt collector" as defined in the FDCPA.

22. Defendant Resurgent is a limited partnership entity organized under Delaware law with offices at 55 Beattie Place, Ste. 110, Greenville, SC 29601. It does business in New York. It does business in this state. Its registered agent and office is

Corporation Service Company, 80 State Street, Albany, New York 12207.

23. Defendant Resurgent operates a collection agency.

24. Defendant Resurgent holds one or more collection agency licenses.

25. Defendant Resurgent uses the mails and telephones to collect debts originally owed to other entities.

26. Defendant Resurgent is a debt collector as defined in the FDCPA.

27. All collection activities complained of herein were conducted at the direction of Resurgent, pursuant to the relationship described below.

28. Notwithstanding the substantial volume of collection activity in which it engages, LVNV claims that it has no employees. (Statement of Material Facts filed as document no. 69 in Randall v. Nelson & Kennard, 2:09-cv-00387 (D.Ariz., filed Aug. 9, 2010)).

29. All actions taken in the name of LVNV are in fact taken by Resurgent, pursuant to a written agreement and power of attorney that LVNV has executed in favor of Resurgent.  (Statement of Material Facts filed as document no. 69 in Randall v. Nelson & Kennard, 2:09-cv-00387 (D.Ariz., filed Aug. 9, 2010)).

30. Defendant LVNV has stated on its Web site, www.lvnvfunding.com, that "LVNV Funding purchases portfolios of both domestic (U.S.) and international consumer debt from credit grantors including banks, finance companies, and other debt buyers.  As the new owner of any debt purchased from the original creditor or from another debt buyer, LVNV Funding's name may appear on a customer's credit bureau, or in a letter from a collection agency if the account is delinquent."

31. Defendant LVNV has also stated on its Web site that "All capital markets

and business development activities are handled internally, while the management of purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent). Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers, and has been hired by LVNV Funding to perform these services on its behalf. Resurgent, a licensed debt collector, may perform these activities directly, or in many cases, will outsource the recovery activities to other specialized, licensed collection agencies. If you are a customer, please direct your inquiries to the firm currently working your account."

32. The above statements continue to describe the relationship between LVNV and Resurgent.

33. Defendants Resurgent and LVNV are under common ownership and management. Both are part of the Sherman Financial Group.

34. On information and belief, based on the Resurgent web site and statements in the Statement of Material Facts filed as document no. 69 in <u>Randall v. Nelson & Kennard</u>, 2:09-cv-00387 (D.Ariz., filed Aug. 9, 2010), defendant Resurgent directed the collection activity complained of herein even though it was taken in the name of LVNV.

**FACTUAL ALLEGATIONS**

35. Defendants sought to collect from Fontaine a credit card account debt incurred in transactions engaged in primarily for personal, family, or household purposes.

36. Defendants attempt to collect on thousands of consumer credit card debts each year in New York State.

37. On November 22, 2019, a collection complaint was filed in the name of

LVNV and at the direction of Resurgent against Fontaine in the Monroe County Clerk's Office, captioned New York State Supreme Court, Monroe County, *LVNV Funding LLC v. Jerry Fontaine*, Index No. E2019011148. The complaint, which was received by Fontaine, claimed that Fontaine was liable to LVNV on a credit card account originated by Synchrony Bank. *See* Exhibit A.

38. LVNV and Resurgent claimed in the collection complaint that the credit card account was purchased by and assigned to LVNV, with the following chain of title of debt sellers: Synchrony Bank (originator of the account) to Sherman Originator III LLC to Sherman Originator LLC to LVNV Funding LLC. Exhibit A at para. 5 and 6.

39. In response to discovery requests in the collection action, LVNV claimed the chain of title was evidenced by a "Bill of Sale" (*see* Exhibit B, attached) and "Declaration of Account Transfer" (*see* Exhibit C, attached). These assignment documents do not refer to any specific credit card accounts.

40. The Bill of Sale purports to evidence a bulk sale and assignment of unspecified credit card accounts from a "Seller" comprised of Synchrony Bank, RFS Holding, LLC and Retail Finance Credit Services, LLC to "Buyer" Sherman Originator III LLC. Exhibit B. The Bill of Sale states, in part, that "Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, the Accounts as set forth in the Notification File . . .". (*Id.*). The "Notification File" is not provided.

41. The Declaration of Account Transfer purports to evidence assignments in bulk of these same credit card accounts from Sherman Originator III LLC to Sherman Originator LLC to LVNV Funding LLC. Exhibit C.

42. Therefore, the Bill of Sale (Exhibit B) and Declaration of Account Transfer (Exhibit C), together with any additional bills of sale and declarations of account transfer that evidence similar chains of title of assignments from Synchrony Bank to LVNV, purport to represent the assignments of hundreds or thousands of consumer credit card accounts from Synchrony Bank to LVNV.

43. Neither the Bill of Sale nor Declaration of Account Transfer specifically identify Fontaine's account or any other individual accounts alleged to be transferred.

44. Even if the Bill of Sale and Declaration of Account Transfer and any similar assignment documents evidence a chain of title that included the Fontaine and class member accounts, the assignors in the alleged chain of title failed to provide Fontaine or class members with notices of some or all of the assignments set forth. In addition, the Bill of Sale and Declaration of Account Transfer do not accurately represent the actual chain of title of assignments, thereby giving rise to additional assignments for which no notices of assignments were provided by assignors to Fontaine and class members.

45. RFS Holding, LLC, one of the assignors in the Bill of Sale, is a limited liability company formed under the laws of the State of Delaware on December 19, 2002, and is a wholly-owned, indirect subsidiary of Synchrony Financial, which is also the indirect parent of Synchrony Bank. According to multiple prospectuses regarding the securitization of Synchrony Bank originated credit card accounts, RFS Holding was organized for the purpose of purchasing, holding, owning and transferring credit card receivables and related activities. RFS Holding has been securitizing credit card receivables since its formation and has not been engaged in any activities other than securitizing assets.

46. Also according to these multiple prospectuses, as part of the process of

securitizing Synchrony Bank credit card receivables, RFS Holding purchases credit card receivables from Synchrony Bank, and sells all receivables transferred to it by Synchrony Bank to Synchrony Credit Card Master Note Trust on an on-going basis.

47. The transfers of credit card receivables from Synchrony Bank to RFS Holding are intended by these parties to be true legal sales.

48. RFS Holding and the Synchrony Credit Card Master Note Trust are separate, bankruptcy-remote affiliates of Synchrony Financial.

49. The assignments made in the securitization process are not reflected in the Bill of Sale or Declaration of Account Transfer.

50. Fontaine and class members received no notices from assignors of the assignments that took place in the securitization process, which included the assignments of credit card receivables from Synchrony Bank to RFS Holding to the Synchrony Credit Master Note Trust.

51. The Bill of Sale itself set forth one assignment, which was from a "Seller" (comprised of Synchrony Bank, RFS Holding and Retail Finance Credit Services) to "Buyer" Sherman Originator III LLC. Fontaine and class members received no notice of this assignment from the "Seller." Further, the Bill of Sale fails to show any of the following assignments that are clearly necessary to the chain of title: an assignment into the "Seller" (Synchrony Bank, RFS Holding and Retail Finance Credit Services); an assignment into RFS Holding; and an assignment into Retail Finance Credit Services. Fontaine and class members did not receive notices of any of these assignments.

52. Upon information and belief, with regard to the Declaration of Account Transfer, Fontaine and class members received no notice of assignment from Sherman

Originator III LLC regarding the assignment to Sherman Originator LLC alleged in the Declaration of Account Transfer, and no notice of assignment from Sherman Originator LLC regarding the assignment to LVNV.

53. The failure of assignors to provide notices of some or all of the foregoing assignments constitutes a violation of New York law.

54. The purported assignments are not effective.

55. Because Fontaine and similarly situated class members did not receive notices of assignment regarding some or all of the foregoing assignments, they were injured.

56. The chain of title claimed by LVNV in the complaint (Exhibit A) omits RFS Holding and Retail Finance Credit Services, and is not consistent with the chain of title in the Bill of Sale (Exhibit B). The chain of title in the Bill of Sale is incomplete on its face, since it does not show any assignment into either RFS Holding or Retail Finance Credit Services; and no assignment into a "Seller" composed of Synchrony Bank, RFS Holding and Retail Finance Credit Services. *Id*. Neither the Bill of Sale (*id*.) nor the Declaration of Account Transfer (Exhibit C) sets forth the assignments necessary for the securitization process (Synchrony Bank to RFS Holding to Synchrony Credit Master Note Trust).

## CLASS ACTION ALLEGATIONS

57. Plaintiff Fontaine brings this action on behalf of a class, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

58. The class consists of (a) all individuals with addresses in New York State (b) with respect to whom LVNV, Resurgent, or other attorneys or debt collectors on behalf of LVNV engaged in debt collection activities (c) where LVNV claimed that it purchased and

was assigned credit card accounts originated by Synchrony Bank (d) where Defendants do not have evidence that the individuals received notices of assignments by each assignor in the actual chain of title.

59. For purposes of the FDCPA claim, the class includes individuals who were the subject of collection activities by or on behalf of LVNV on or after a date one year prior to the filing of this action. For purposes of the GBL §349 claim, the class includes individuals who were the subject of collection activities by or on behalf of LVNV on or after a date 3 years prior to the filing of this action. *Gaidon v. Guardian Life Ins. Co.*, 96 N.Y.2d 201, 208, 727 N.Y.S.2d 30, 750 N.E.2d 1078 (2001).

60. The members of the class exceed 40 in number. The class is therefore so numerous that joinder of all members is impracticable.

61. There are questions of law and fact common to the class members, which predominate over any questions affecting only individual class members. The principal common questions are:

    a. Whether LVNV engages in collection activities on credit card accounts allegedly originated by Synchrony Bank where notices of assignments by all assignors in the chain of title have not been provided to class members;

    b. Whether engaging in such collection activities violates the FDCPA.

    c. Whether engaging in such collection activities violates GBL §349.

62. The only individual issues are the identification of the class members and actual damages (the amounts paid by each class member). This can readily be determined from the records of LVNV or its assignors.

63. Plaintiff's claims are typical of those of the class members. All claims are based on the same facts and legal theories.

64. Plaintiff will fairly and adequately represent class members' interests. Plaintiff has retained counsel experienced in bringing class actions pursuant to the FDCPA and GBL § 349.

65. A class action is superior for the fair and efficient adjudication of the class members' claims, in that:

    a. The amount of each claim is too small to make individual litigation economical.

    b. Congress specifically envisioned class actions as a principal means of enforcing the FDCPA. *See* 15 U.S.C. § 1692k.

    c. The members of the class are generally unsophisticated consumers, who are unaware of their rights and whose rights will not be vindicated in the absence of a class action.

    d. Prosecution of separate actions by individual members of the class would also create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties.

    e. Individual actions raising the same legal issue, even if economically feasible, would not be in the interests of judicial economy.

### FIRST CLAIM – VIOLATIONS OF 15 U.S.C. §§ 1692e AND 1692f

66. Plaintiff incorporates paragraphs 1 – 65.

67. Defendants violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(5), 1692(10),

1692f and 1692f(1) by engaging in collection activities against class members on accounts originated by Synchrony Bank where notices of assignments were not received from assignors with respect to each of the entities in the chain of title of assignments.

68. Section 1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

> (2) The false representation of—
>
>> (A) the character, amount, or legal status of any debt; . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

69. Section 1692f provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

70. Without proper notices of assignment, Defendants' debt collection activities were not permitted under New York law, and were unfair and unconscionable.

71. Plaintiff and each class member were damaged by the conduct complained of.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.      Statutory damages;

    ii.     Actual damages;

    iii.    Attorney's fees, litigation expenses and costs of suit;

    iv.    Such other or further relief as is proper.

## SECOND CLAIM – VIOLATIONS OF GBL § 349

72. Plaintiff incorporates paragraphs 1 – 65.

73. Defendants engaged in deceptive practices in violation of GBL §349 by pursuing debt collection activities against class members on accounts originated by Synchrony Bank where notices of assignments were not received from assignors with respect to each of the entities in the chain of title.

74. Plaintiff and each class member was damaged by the conduct complained of.

75. New York General Business Law §349(a) provides as follows: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

76. Defendants' deceptive conduct was consumer oriented in that it was directed against and harmed hundreds if not thousands of consumers.

77. Defendants' practices were deceptive and misleading in a material way.

78. The conduct complained of was likely to harm a reasonable consumer acting reasonably under the circumstances.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.      Statutory damages;

  ii. Actual damages;

  iii. Treble damages;

  iv. Appropriate injunctive relief;

  v. Attorney's fees, litigation expenses and costs of suit;

  vi. Such other or further relief as is proper.

Dated: April 28, 2020

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by Jury.

      Respectfully submitted,

      s/David M. Kaplan
      David M. Kaplan
      46 Helmsford Way
      Penfield, NY 14526
      (585) 330-2222
      dmkaplan@rochester.rr.com


      s/ Tiffany N. Hardy
      Tiffany N. Hardy
      EDELMAN, COMBS, LATTURNER &
      GOODWIN, LLC
      20 South Clark Street, Suite 1500
      Chicago, IL 60603-1824
      (312) 739-4200
      (312) 419-0379 (FAX)
      courtecl@edcombs.com

      T:\36944\Pleading\Complaint_Pleading.WPD