UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JERRY FONTAINE, *on behalf of himself and all others similarly situated*,

                Plaintiff,

v.

RESURGENT CAPITAL SERVICES, L.P., and LVNV FUNDING, LLC,

                Defendants.
_____

**DECISION AND ORDER**

6:20-CV-06274 EAW

## INTRODUCTION

Plaintiff Jerry Fontaine ("Plaintiff") brings this purported class action asserting that defendants Resurgent Capital Services, L.P. ("Resurgent") and LVNV Funding LLC ("LVNV") (collectively "Defendants") have violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* (the "FDCPA"), and New York General Business Law § 349. (Dkt. 1; Dkt. 20).

Presently before the Court is a motion filed by Defendants to compel arbitration or, in the alternative, dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. 23). For the reasons set forth below, the Court grants Defendants' request to compel arbitration, dismisses Plaintiff's claims to the extent they purport to be brought on behalf of a class of others similarly situated, and otherwise denies Defendants' request for dismissal.

**BACKGROUND**

I.  **Factual Background**

LVNV is a "debt buyer that acquires or claims to acquire, among other kinds of debt, charged-off credit card accounts of consumers by virtue of assignments from account originators and intermediary debt sellers." (Dkt. 20 at ¶ 2). Resurgent is an affiliate of LVNV that is "involved in collecting its debts." (*Id*. at ¶ 3). Resurgent and LVNV are "under common ownership and management" and are both "part of the Sherman Financial Group." (*Id*. at ¶ 37).

Plaintiff alleges that Defendants improperly engaged in collection activities against him and others similarly situated related to credit card accounts originated by Synchrony Bank. (*Id*. at 2). More specifically, Plaintiff claims that there were "gaps in the chain of title" with respect to these accounts and that "proper notices of the assignments by assignors in the chain of title from Synchrony Bank to LVNV were not provided in accordance with New York law," such that "LVNV had no legal interest in the debts." (*Id*.).

With respect to Plaintiff in particular, on November 22, 2019, LVNV brought a complaint against him in New York State Supreme Court, Monroe County, alleging that Plaintiff was liable to LVNV on a credit card account originated by Synchrony Bank (the "Account"). (*Id*. at ¶ 41). LVNV alleged in the state court collection action that title to the Account had passed from Synchrony Bank to Sherman Originator III LLC, from Sherman Originator III LLC to Sherman Originator LLC, and from Sherman Originator LLC to LVNV. (*Id*. at ¶ 42). Plaintiff maintains that this claimed chain of title is inaccurate

and unsupported by the Bill of Sale produced by LVNV in the state court collection action. (*Id*. at ¶ 64).  Plaintiff further maintains that he received no notice of any of the claimed assignments, in violation of New York law.  (*Id*. at ¶¶ 57-62).

The credit card agreement that Plaintiff entered into when he opened his Account contains an arbitration provision requiring arbitration of "any dispute or claim, including but not limited to, statutory, common law, and equitable claims, between you or any other user of your account and [Synchrony Bank], [its] affiliates, [and] agents. . . that relates to your account. . . ." (Dkt. 23-2 at 13).  The arbitration provision further provides that "**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST [SYNCHRONY BANK] . . . IN COURT OR ARBITRATION.  ALSO, YOU MAY NOT BRING CLAIMS AGAINST [SYNCHRONY BANK] . . . ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT.**"  (*Id*. (emphasis in original)).

## II.  Procedural Background

Plaintiff commenced the instant action on April 28, 2020.  (Dkt. 1).  Defendants filed a motion to dismiss on September 25, 2020.  (Dkt. 18).   Plaintiff then filed an amended complaint as of right on October 1, 2020 (Dkt. 23), and the Court accordingly denied the motion to dismiss the original complaint as moot (Dkt. 22).

Defendants filed the instant motion to compel arbitration and to dismiss on October 12, 2020.  (Dkt. 23).  Plaintiff filed his response on November 3, 2020 (Dkt. 25), and Defendants filed their reply on November 10, 2020 (Dkt. 27).

## DISCUSSION

I.  **Defendants' Request to Compel Arbitration**

Defendants contend that Plaintiff's claims are subject to arbitration, and accordingly ask the Court to issue an order compelling arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 2-4. "The question of whether the parties have agreed to arbitrate, *i.e.*, the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002))[1]. "[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "Because the standard is akin to that on summary judgment, materials outside the pleadings may be considered." *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 342 (S.D.N.Y. 2018); *see also Meyer v. Uber Techs.*, 868 F.3d 66, 74 (2d Cir. 2017) (on a motion to compel arbitration, "the court consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . .

---

[1]  Although they did not make such an argument in their initial moving papers, Defendants suggest in their reply that this is a case where "any question as to the validity of the assignment must be determined by an arbitrator, not the Court." (Dkt. 27 at 11). However, the arbitration provision at issue unequivocally provides that "[n]otwithstanding any other language in this section, <u>only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof</u>." (Dkt. 23-2 at 13 (emphasis added)). Defendants' contention that an arbitrator must decide whether the arbitration provision can be enforced lacks merit.

affidavits, and draws all reasonable inferences in favor of the non-moving party." (alterations in original) (quotation and citation omitted)).

Pursuant to the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  "The FAA reflects a liberal federal policy favoring arbitration agreements, and places arbitration agreements on the same footing as other contracts." *Meyer*, 868 F.3d at 73.  When deciding whether an action should be arbitrated, "first, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable . . . ." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

A. **Existence of an Arbitration Agreement Between Plaintiff and LVNV**

Here, the parties' dispute centers on whether there is an enforceable arbitration agreement between Plaintiff and LVNV[2].  In particular, while Plaintiff does not dispute that he entered into a valid arbitration agreement with Synchrony Bank, he contends that there is a factual dispute as to whether Synchrony Bank's rights pursuant to that agreement were validly assigned to LVNV.  (*See* Dkt. 25 at 15).

---

[2]   Resurgent does not claim to have an enforceable arbitration agreement with Plaintiff.  However, as discussed further below, the arbitration provision in this case encompasses claims against "affiliates" of the entity holding title to the Account, and Plaintiff concedes that Resurgent is an affiliate of LVNV. (*See* Dkt. 20 at ¶ 3).

"The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." *Nicosia*, 834 F.3d 229.  However, the parties have failed to meaningfully address the issue of what state's law the Court should apply. Defendants suggest in a footnote that "to the extent state law applies, Utah law should be applied" (Dkt. 23-8 at 16 n.1), based on the statement in the arbitration provision at issue that "[t]his Arbitration section of this Agreement is governed by the Federal Arbitration Act (FAA).  Utah law shall apply to the extent state law is relevant under the FAA" (Dkt. 23-2 at 13).  Plaintiff has not briefed the choice-of-law issue, but appears to simply assume that New York law applies.  (*See* Dkt. 25 at 16-17).

Defendants' contention that Utah state law applies lacks merit.  The choice-of-law provision on which it relies is "part of the very same provision of the" credit cart agreement that Plaintiff contends was not validly assigned to LVNV, and "[t]o rely on the choice-of-law clause would therefore amount to bootstrapping." *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 424-25 (S.D.N.Y. 2012); *see also Biggs v. Midland Credit Mgmt.*, Inc., No. 17-CV-340 (JFB)(ARL), 2018 WL 1225539, at *6 (E.D.N.Y. Mar. 9, 2018) ("Although the Arbitration Provision contains a choice-of-law provision, this provision does not determine the relevant state law where, as here, the non-moving party challenges whether a valid agreement to arbitrate exists.").  Instead, "[i]ssues of contract formation—regarding [the credit card agreement] as a whole, and the agreement to arbitrate within [that agreement]—are governed by the choice-of-law doctrine of the forum state, here, New York." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 46 (E.D.N.Y. 2017).

"Under New York's choice-of-law rules, the court evaluates the center of gravity or grouping of contacts, with the purpose of establishing which state has the most significant relationship to the transaction and the parties." *Id*. (quotation omitted). Here, the Court concludes that New York has the most significant contacts with the matter in dispute. The record before the Court indicates that Plaintiff lives in and used his credit card in New York, and Plaintiff's claims rest in significant part on his assertion that New York's consumer protection laws have been violated. Accordingly, the Court will apply New York law in determining the validity of the asserted arbitration agreement. *See id*. (where New York has the most significant contacts with the matter in dispute, "New York law governs the issue of whether an arbitration agreement exists between the parties").

Under New York law, "[a] party must prove assignment of a contract by a preponderance of the evidence." *Zambrana v. Pressler & Pressler, LLP*, No. 16-CV-2907 (VEC), 2016 WL 7046820, at *5 (S.D.N.Y. Dec. 2, 2016); *see also Biggs*, 2018 WL 1225539, at *8 ("Under New York law, the party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." (quotation omitted)); *Marcario v. Midland Credit Mgmt., Inc.*, No. 2:17-CV-414 ADS ARL, 2017 WL 4792238, at *3 (E.D.N.Y. Oct. 23, 2017) (defendants seeking to enforce arbitration agreement were required to prove by a preponderance of the evidence that they were "the true assignees of the Plaintiff's account"). The Court notes that there is no dispute that Synchrony Bank was free to assign its rights under the credit card agreement; that agreement specifically provides that Synchrony Bank may "sell, assign or

transfer any or all" of its "rights or duties under this Agreement or your account[.]"  (Dkt. 23-2 at 12).

Defendants have produced the following in support of their request to compel arbitration: (1) a Bill of Sale dated "February 2019" reflecting a sale from Synchrony Bank to Sherman Originator III LLC of certain accounts pursuant to an "Accounts Purchase Agreement"; (2) a letter from Synchrony Bank to Plaintiff dated February 8, 2020, advising him that the Account had been sold to Sherman Originator III LLC on February 22, 2019; (3) a sworn declaration from Kim Hurley, an authorized representative and records custodian of Sherman Originator III LLC, confirming that Plaintiff's Account was one of the accounts sold by Synchrony Bank to Sherman Originator III LLC in February 2019; (4) a "Declaration of Account Transfer" reflecting that Sherman Originator III LLC sold and assigned its interest in Plaintiff's Account to Sherman Originator LLC on February 26, 2019, and that Sherman Originator LLC then sold and assigned its interest in Plaintiff's Account to LVNV; (5) a sworn declaration from Katherine Heatherly, an authorized representative and records custodian of Sherman Originator LLC confirming that Plaintiff's Account was transferred from Sherman Originator III LLC to Sherman Originator LLC on February 26, 2019, and that Sherman Originator LLC then transferred Plaintiff's Account to LVNV that same day.  (Dkt. 23-2 at 5-8; Dkt. 23-3 at 2-6; Dkt. 23-4 at 3-5).  Courts in this Circuit have routinely found similar submissions adequate under New York law to prove a valid assignment.  *See, e.g., Biggs*, 2018 WL 1225539, at *7; *Marcario*, 2017 WL 4792238, at *3; *Zambrana*, 2016 WL 7046820, at *5.

In opposing Defendants' motion to compel arbitration, Plaintiff argues that there are "inconsistent and conflicting statements" regarding the chain of title in the record. (Dkt. 25 at 9). In particular, he notes that the record contains: an affidavit from an employee of Synchrony Bank indicating that Synchrony Bank sold and assigned Plaintiff's Account directly to LVNV on February 22, 2019; a "Purchase Price Reconciliation/Funding Instructions" document describing a February 2019 sale from Synchrony Bank to Sherman Capital Markets LLC; and a letter dated March 1, 2019, from Synchrony Bank to Plaintiff indicating that the Account was sold to Resurgent on February 22, 2019. (Dkt. 25 at 9; *see* Dkt. 23-2 at 3, 6-7). Plaintiff also notes that he has alleged in the amended complaint that his Account was originated by Synchrony Bank, transferred by Synchrony Bank to a company known as RFS Holding LLC, and that RFS Holding LLC then transferred the Account to a company known as the Synchrony Credit Card Master Note Trust, which never transferred it to any other entity. (Dkt. 25 at 12, *citing* Dkt. 20 at ¶¶ 50-51, 56).

Before turning to the merits of Plaintiff's arguments, the Court must resolve as a threshold matter Defendants' argument that Plaintiff "lacks standing to challenge the validity of the assignment between two separate parties or any actions taken by Synchrony [Bank]." (Dkt. 23-8 at 19-20); *see Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 580 (E.D.N.Y. 2015) ("Standing is the threshold question in every federal case, and implicates the Court's subject matter jurisdiction." (quotation omitted)), *aff'd*, 689 F. App'x 89 (2d Cir. 2017). Defendants are correct that "[b]orrowers do not automatically have constitutional standing to challenge the validity of their mortgage holders' assignments," and that "as long as the borrower's obligations—and exposure to collection

proceedings—do not change, the borrower does not suffer injury merely because a down-the-road assignment may have been faulty." *Im v. Bayview Loan Servicing LLC*, No. 16-CV-634 (JPO), 2018 WL 840088, at *4 (S.D.N.Y. Feb. 12, 2018).

However, as the court in the *Im* case explained in a well-reasoned decision, this analysis does not apply to FDCPA claims, because "abusive debt collection—even of a debt actually owed—is a harm in itself." *Id*. at *6. Accordingly, a plaintiff has standing to pursue an FDCPA claim where, as here, he contends that a debt collector misrepresented its legal authority to collect a particular debt. *Id.* Defendants' argument to the contrary misapprehends the nature of an FDCPA claim and is not persuasive—perhaps recognizing the weakness of their contention, Defendants have not even mentioned this standing argument in their reply.

However, the Court agrees with Defendants that they have come forward with evidence amply demonstrating that LVNV is the valid assignee of Plaintiff's Account and that Plaintiff has failed to produce or point to any evidence to call into question that conclusion. As to the three documents that Plaintiff claims create inconsistencies in the chain of title, he has failed to explain how these documents create a genuine issue of fact as to whether LVNV holds title to his Account. The affidavit from Synchrony Bank's employee does not contradict LVNV's assertion that it holds title to the Account at issue, even if it fails to set forth the intermediary steps that were involved in LVNV obtaining such title. The other two documents at issue were generated by Synchrony Bank and are neither the purchase agreements/bills of sale nor sworn statements by an employee of any of the relevant parties. While these documents arguably indicate a lack of rigor by

Synchrony Bank in creating ancillary documents, they do not call into question the authenticity of the documents establishing the chain of custody. *See Biggs*, 2018 WL 1225539, at *7 (plaintiff could not defeat motion to compel arbitration by pointing to "conflicting statements" in evidence of record where those "conflicting statements" did not call into question the trustworthiness of the sworn affidavits establishing chain of title); *Brecher v. Midland Credit Mgmt., Inc.*, No. 18-CV-3142 ERK JO, 2019 WL 1171476, at *6 (E.D.N.Y. Mar. 13, 2019) (inconsistencies in documents submitted by the defendant regarding the date on which the plaintiff's account was sold did not create "meaningful dispute as to whether Synchrony assigned [the plaintiff's] account to [the defendant]").

Plaintiff's argument regarding the allegations set forth in the amended complaint also fails. As noted above, the standard on a motion to compel arbitration is akin to the standard on a motion for summary judgment; accordingly, a plaintiff may not defeat such a motion by reference to his own allegations, unsupported by admissible evidence. *See Morelli v. Alters*, No. 1:19-CV-10707-GHW, 2020 WL 2306445, at *5 n.3 (S.D.N.Y. May 8, 2020) ("Unlike on a motion to dismiss, well-pleaded allegations in a complaint are insufficient to defeat a motion for summary judgment and, therefore, are insufficient, in and of themselves, to defeat a petition to compel arbitration."); *Biggs*, 2018 WL 1225539, at *7 (in opposing motion to compel arbitration, the plaintiff was obliged to come forward with "evidence of her own" to contest the fact that her account was assigned to the defendants). Plaintiff's contentions regarding the purported transfers to RFS Holding LLC, and the Synchrony Credit Card Master Note Trust are supported only by his own

allegations, and are thus insufficient to overcome the evidence presented by Defendants in support of their motion to compel arbitration.

Finally, Plaintiff's citation to New York state cases requiring a debt buyer to exactingly "prove a complete and unbroken chain of title to any debt it seeks to collect" (Dkt. 25 at 16) is misplaced. As the court in *Zambrana* explained, "[t]he 'special proof' required by New York law to establish a credit card account assignee's claim on the account does not apply" in an FDCPA action; it applies only in an action where the assignee is affirmatively seeking to collect on the debt. 2016 WL 7046820, at *6; *see also Marcario*, 2017 WL 4792238, at *3 (rejecting argument relying on standard of proof applied to New York debt collection cases, explaining that "[t]he New York State cases [the plaintiff] cites are not FDCPA cases; they are debt collection cases, where the procedural posture of the parties requires a different standard"). Defendants are not required to comply with New York's stringent standard of proof for assignees' bringing debt collection cases; instead, as explained above, they are required to prove title to Plaintiff's Account by a preponderance of the evidence. LVNV has satisfied that standard in this case, and Plaintiff has failed to come forward with any evidence of his own establishing the existence of a genuine factual dispute. Accordingly, the Court finds as a matter of law that an enforceable arbitration agreement exists between LVNV and Plaintiff. *See Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, 970 F. Supp. 2d 157, 166 (S.D.N.Y. 2013) ("Under New York law, an arbitration clause is generally held to apply to the assignee of a contract.") (collecting cases), *on reconsideration on unrelated grounds*, No. 2:13-CV-2597-GHW, 2014 WL 12935841 (S.D.N.Y. Sept. 10, 2014).

### B. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement

Once it has been established that an arbitration agreement exists, courts in this Circuit "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *State of New York v. Oneida Indian Nation*, 90 F.3d 58, 61 (2d Cir. 1996). Here, the arbitration provision at issue is broadly drafted, encompassing all "statutory, common law, and equitable claims" that "relate[] to" the Account, and further including claims brought against an "affiliate" of the holder of the debt. (Dkt. 23-2). Plaintiff has not argued that his claims, including those against LVNV's affiliate, Resurgent, are not within the scope of his agreement to arbitrate. Further, the federal statutory claims that Plaintiff asserts are not ones that Congress intended to be nonarbitrable. *See, e.g., Vitrano v. N.A.R., Inc.*, No. 18CV06754KAMRLM, 2020 WL 1493620, at *5 (E.D.N.Y. Mar. 27, 2020) ("Generally, federal statutory claims are arbitrable unless Congress clearly communicates otherwise . . . and there is no indication that Congress intended FDCPA claims to be nonarbitrable."). On this record, the Court easily concludes that Plaintiff's claims fall within the scope of the arbitration provision.

### C. Plaintiff's Class Action Claims Must be Dismissed

As noted above, the arbitration provision in Plaintiff's credit card agreement also contains a class action waiver. "Class action waivers . . . are valid and enforceable." *Vitrano*, 2020 WL 1493620, at *9; *see Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232, 236-8 (2013)  (the FAA does not allow a court "to invalidate arbitration agreements on the ground that they do not permit class arbitration of a federal-law claim" (citation

omitted)). Having found that the arbitration provision is enforceable by LVNV, the Court is further constrained to find that Plaintiff cannot maintain his class action claims. "Accordingly, because plaintiff waived [his] right to participate in a class in court or arbitration, the Court compels arbitration of plaintiff's claims on an individual basis and dismisses plaintiff's class action claims." *Biggs*, 2018 WL 1225539, at *9.

## II. Defendants' Request for Dismissal Pursuant to Rule 12(b)(6)

In the alternative, Defendants have asked the Court to dismiss Plaintiff's amended complaint for failure to state a claim. However, because the Court has found that Plaintiff's claims must be heard by an arbitrator, Defendants' request for dismissal under Rule 12(b)(6) is moot. *See Considine v. Brookdale Senior Living, Inc.*, 124 F. Supp. 3d 83, 92 (D. Conn. 2015).

## III. The Proceedings are Stayed Pending Completion of Arbitration

"[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). "When a stay is not requested, a district court has discretion in determining whether to stay or dismiss the case pending arbitration." *Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018). However, the Second Circuit has "detailed several reasons for staying, instead of dismissing, cases pending arbitration, including that a stay furthers the FAA's underlying policy to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* (quotation marks omitted and citing *Katz*, 794 F.3d at 346).

Here, neither party has requested a stay pending arbitration. However, the parties have also not identified any reason why dismissal is a preferable course of action. In light of the Second Circuit's expressed preference for entry of a stay under normal circumstances, the Court, in its discretion, stays the proceedings pending arbitration.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' pending motion (Dkt. 23) to the extent that it compels arbitration on an individual basis and dismisses Plaintiff's class action claims, but otherwise denies Defendants' request that the action be dismissed. Instead, the matter is stayed pending further order of the Court. The parties shall advise the Court within 15 days of entry of a final arbitration decision.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 19, 2021
      Rochester, New York